**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DISTRICT**

| | |
|---|---|
| KELOURDE BARTHELEMY | ) |
| | ) |
| | ) |
| Plaintiff, | ) COMPLAINT |
| | ) |
| v. | ) |
| | ) |
| THE MAY INSTITUTE, INC. | ) |
| | ) |
| Defendant. | ) |

**INTRODUCTION**

Kelourde Barthelemy ("Plaintiff" or "Ms. Barthelemy") brings this action seeking

damages that are owed for violations of the Family Medical Leave Act of 1993 by the

May Institute ("Defendant") pursuant to 29 U.S.C. §2601 et seq. and, *inter alia*,

infliction of emotional distress pursuant to *Agis v. Howard Johnson Co.*, 355 N.E.2d 315,

318-19 (Sup. Jud. Ct. Mass., Suffolk 1976).

**JURISDICTION AND VENUE**

1.  Jurisdiction is conferred upon this Court by 29 U.S.C. §2617(a)(2), which

    grants the Court subject matter jurisdiction; and 28 U.S.C. §1331, which

    grants the Court original jurisdiction over civil action arising under federal

    laws, and 28 U.S.C. §1367, which grants the Court supplemental jurisdiction

    over the state claims that are so related to the FMLA case that they are within

the original jurisdiction that the state claims form part of the same case or controversy.

2. Personal jurisdiction and venue are appropriate pursuant to 28 U.S.C. §1391 because the Plaintiff resides in Suffolk County, Massachusetts; the Defendant, the May Institute, Inc., has its principal place of business and operation in Norfolk County, Massachusetts, and the unlawful conduct complained of occurred in this District.

## PARTIES

3. Plaintiff, KELOURDE BARTHELEMY, is an adult resident of the Commonwealth of Massachusetts who resides at 706 Washington Street, Apt 2, Dorchester, Massachusetts 02124.

4. Defendant, MAY INSTITUTE, is the Plaintiff's former employer, is a not for profit corporation, and on information and belief, has its principal place of business at 41 Pacella Park Drive, Randolph, MA 02368.

## FACTUAL ALLEGATIONS

5. Ms. Barthelemy worked at the May Institute from August 5, 2016 to February 16, 2018.

6. Ms. Barthelemy's title at the May Institute was Program Specialist, where she worked full-time as a health aid for mentally challenged adult individuals.

7. Ms. Barthelemy's rate of pay was twelve dollars and fifty cents ($12.50) per hour.

8.  Ms. Barthelemy's minor son, Kharvel Barthelmey ("Kharvel"), at all times material to this action, had and has a serious health condition, congenital heart disease. Kharvel was born with half of a heart and has had multiple cardiac surgeries since birth.

9.  The Defendant, it agents, servants and employees, (hereafter collectively referred to as Defendant) were aware of Kharvel's condition. On multiple occasions Ms. Barthelemy spoke to her supervisor, the Director of the Day Program, about Kharvel's serious health condition.

10. On February 15, 2018, Ms. Barthelemy met with the Director of the Day Program and requested that her position be changed from a full-time set schedule to full-time relief staff in order to allow her flexibility to accommodate Kharvel's on-going medical needs. This request constituted notice to the employer, pursuant to 29 CFR 825.303 and other regulations and laws, that Ms. Barthelemy needed intermittent leave and/or reduced leave schedule leave (hereafter both referred to as leave) under the Federal Family Medical Leave Act. 29. U.S.C. § 2612 (b) (1) and (2).

11. On February 16, 2018, at 12:00 P.M., Ms. Barthelemy's mother notified her by phone that Kharvel was experiencing serious medical complications arising from his heart condition. He had a fever, was vomiting, and was having trouble breathing. Ms. Barthelemy knew that she needed to take her child to the hospital immediately.

12. At the time of Kharvel's health crisis on February 16, 2018, Ms. Barthelemy's mother was responsible for the care of Kharvel and one other child. Ms.

Barthelemy's mother lacked English language proficiency, which, combined

with her responsibility for the care of another child that day, made it

imperative that Ms. Barthelemy leave the workplace immediately so she could

get to the hospital to manage her child's condition and work directly with his

medical providers. This was a medical emergency and Ms. Barthelemy's

ability to get to her son quickly was crucial and an exigency under the federal

regulations and the law.

13. Ms. Barthelemy immediately spoke with the Director of Day Services to

explain her urgent need to leave the workplace to attend to Kharvel's health

crisis. The Director told her to wait until they found someone else to cover for

her. After waiting twenty minutes, Ms. Barthelemy told the Director that she

could no longer wait as her child could die. The Director told Ms. Barthelemy

that she could not go because they had not found anyone to replace her and

that Ms. Barthelemy should tell her mother to call 911 if it was an emergency.

The Director told her that she could leave at 3:30 P.M. when everyone leaves.

Ms. Barthelemy explained the situation further. The Director threw Ms.

Barthelemy's handbag at her and angrily told her she could leave.

14. While at the hospital with her son, Ms. Barthelemy received a call from the

Human Resources Department of the May Institute informing her that she was

suspended until further notice and that she should not return to work until the

employer called her. Ms. Barthelemy later received the written suspension

letter dated February 16, 2018, attached her as Exhibit A.

15. On the next work day, February 20, 2018, Ms. Barthelemy delivered a written letter from the hospital dated February 16, 2018 to the employer, which stated that "Kharvel is a 7- year old male with complex medical history and diagnoses which include, but are not limited to, congenital heart disease… we are hopeful that you will take into consideration a mother's responsibilities as a caregiver and guardianship to ensure the patient's medical needs are appropriately met…" A copy of this letter is attached here as Exhibit B.

16. Ms. Barthelemy was subsequently discharged on February 22, 2018 following a discharge meeting.

## COUNT ONE: INTERFERENCE IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT- INTERFERENCE

17. Plaintiff incorporates and re-alleges the allegations set forth in Paragraphs 1 through 16.

18. Defendant employs 50 or more employees.

19. Ms. Barthelemy worked more than 1250 hours in the fifty-two (52) weeks prior to her termination.

20. Defendant's acts and omissions described above constituted unlawful interference with Plaintiff's FMLA rights.

## COUNT TWO: RETALIATON IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT – RETALIATION

5

21. Plaintiff incorporated and re-alleges the allegations set forth in Paragraphs 1-20.

22. Defendant's acts and omissions described above constituted retaliation against Plaintiff for attempting to exercise her FMLA rights.

**COUNT THREE: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

23. Plaintiff incorporated and re-alleges the allegations set forth in Paragraphs 1-22.

24. Defendant knew or should have known that emotional distress would have been a likely result of their conduct towards the Plaintiff.

25. The Defendant's conduct was 'extreme and outrageous.' That the FMLA forbids such behavior is an indication that society has designated this as something "utterly intolerable" under the *Howard Johnson* standard.

26. The Defendant made the Plaintiff wait before she could go, while she was wondering if her child would die on his way to the Emergency Room without her.

27. Plaintiff was so distressed after being fired that she was afraid to look for another job out of fear of being fired again. She waited eight months to look for work and experienced stress, insomnia, and nightmares.

28. The Plaintiff's distress was severe and ongoing. She was tightly wound and crying all of the time. She had trouble focusing on conversations and was consumed with anxiety. The Plaintiff had been the primary breadwinner of the family and the loss of stability was devastating, such that "no reasonable person could be expected to endure it."

## COUNT FOUR: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

29. Plaintiff incorporated and re-alleges the allegations set forth in Paragraphs 1-28.

30. The Defendant acted negligently in preventing the Plaintiff from leaving right away to go to her son in the hospital and in the other acts and omissions described above.

31. The Plaintiff suffered emotional distress as she worried for her son's life during that time, and residual emotional distress as she worried about supporting her family after losing her job.

32. The Plaintiff suffered anxiety, stress, insomnia, nightmares, financial strain, and a general lack of stability in her life after this incident. She was consumed with worry and afraid of finding another job, only to be fired again if her son had another medical emergency.

33. A reasonable person would have suffered emotional distress in these circumstances.

34. As a result of the Defendant's interference with Plaintiff's FMLA rights, Defendant's retaliation against Plaintiff for attempting to exercise her FMLA rights, and the fact that Defendant inflicted emotional distress upon Plaintiff as a result, Plaintiff has incurred harm and loss in an outstanding amount of back pay, along with liquidated damages, and costs of litigation.

**JURY DEMAND**

35. Plaintiff requests a trial by jury on her claims.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court

a.  Award Plaintiff damages with interest at the statutory rate;

b.  Award her money damages pursuant to 26 U.S.C. §2617, amounting to twice the back wages owed to her as a result of the termination by the Defendant; in addition to the value of her lost employment benefits and any other lost compensation (plus interest on the total);

c.  Award the Plaintiff damages including, but not limited to: compensatory damages, damages for emotional distress, damages for humiliation, consequential damages, back pay, front pay, lost employment benefits, lost opportunity;

d.  Grant her such additional or alternative relief as it may deem just, proper, and equitable.

Respectfully Submitted,
Kelourde Barthelemy
By her attorney

*//s// Constance A. Browne*
_____

Constance Browne
Supervising Attorney
BBO # 061330

Boston University Civil Litigation
& Justice Program
197 Friend Street
Boston, MA 02114
617-603-1522
cbrowne@gbls.org

With her
Elayna Bartolomeo
Rule 3:03 Law Student

**EXHIBIT A**



MayInstitute       May Center for Adult Services

704 Broadway • Revere, Massachusetts 02151 • Tel: 781.286.0200 • Fax: 781.286.0316 • www.mayinstitute.org

To:    Kelourde Barthelemy
From:  Kaylee Hargreaves
Date:  2/16/18
Re:    Suspension

Effective immediately, you have been suspended pending the outcome of an internal investigation. Per the May Institute policy on investigations, outlined on page 26 of your 2016 Employee Handbook, you will be paid for up to ten (10) consecutive, regularly scheduled shifts over the next two weeks. Any hours beyond your regular schedule (i.e. planned overtime within your program or other programs) will not be paid during this suspension.

Should the investigation not be complete within two weeks, your status will change to unpaid, and you may remain on unpaid suspension for up to thirty (30) days. During this time, any unused, accrued earned leave may be used. If thirty (30) days have passed and there is no conclusion to the investigation, management will re-evaluate your employment status at that time.

While suspended, you are not allowed on May Institute property without specific authorization from management. In addition, so that we may protect the integrity of this investigation, we ask that you not contact other May Institute employees regarding this investigation.

If you have any further questions regarding this investigation or your suspension, please contact MaryJane Norris, Sr. Human Resources Business Partner at 781-286-0200.

**EXHIBIT B**





HARVARD MEDICAL SCHOOL
TEACHING HOSPITAL

**Boston Children's Primary Care at Longwood**
300 Longwood Avenue, BCH 3081, Boston, MA 02115
617-355-7701 | bostonchildrens.org

February 16, 2018

May Institute
Center for Adult Services (Day Habilitation Program)
14 Pacella Drive
Randolph, MA 02368
(781) 437-0700
Attention: Kaylee Hargreaves
k.hargreaves@mayinstitute.org

To Whom It May Concern:

I am writing on behalf of patient Kharvel Barthelemy and his mother, Kelourde Barthelemy. I am a clinical Social Worker in the General Pediatrics Division at Boston Children's' Hospital. Kharvel is a 7 year old male with complex medical history and diagnoses which include but not limited to congenital heart disease. Patient was accompanied by mother when he presented to BCH Urgent Care Clinic due to medical concerns which were reviewed and addressed by medical team. During the visit, mother expressed concerns related to employment as she had received notification of patient's current illness and symptoms during her work shift.

We are hopeful that you will take into consideration mother's responsibilities as a caregiver and guardianship to ensure that patient's medical needs are appropriately met, especially due to his chronic medical history and that her employment with your agency is not at risk.

Best Regards,

Michele Maldonado, LCSW
(617)355-7818